IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK HOLLIDAY, STEVE BRADLEY,      )
CHARLES P. VALENTINE, DAVID        )
ALEXANDER, JAMES D. ANDERSON,      )
NELDA WILSON, RICHARD KRIESIEN     )
JAMES M. WRIGHT, Trustees for      )
the AGC-INTERNATIONAL UNION OF     )
OPERATING ENGINEERS, LOCAL 701,    )
TRUST FUNDS,                       )
                                   )
          Plaintiffs,              )          Civil No. 05-1459-AS
                                   )
     vs.                           )
                                   )
POW WAN CONTRACTING, INC., an      )          OPINION AND ORDER
Oregon Corporation,                )
                                   )
          Defendant.               )
_____)
Steven Goldberg
Goldberg, Mechanic, Stuart & Gibson LLP
621 SW Morrison Street, Suite 1450
Portland, OR 97205
     Attorney for plaintiff


1 - OPINION AND ORDER

John H. Beckfield
Beckfield & Associates
528 Cottage Street, NE, Suite 160
Salem, OR 97301
    Attorney for defendant

ASHMANSKAS, Judge:

## OVERVIEW OF COMPLAINT

Mark Holliday, Steve Bradley, Charles P. Valentine, David

Alexander, James D. Anderson, Nelda Wilson, Richard Kriesien, and

James M. Wright (collectively Trustees) are trustees of the

Oregon-Columbia Chapter Associated General Contractors of

America, Inc. (AGC) and International Union of Operating

Engineers Local 701 (Local 701) Health and Welfare, Pension,

Vacation and Training Trust Funds (Trust Funds).  Trustees filed

this action against Pok Wan Contracting, Inc. (Pok Wan), on

behalf of AGC-Local 701, pursuant to section 301(a) of the Labor

Management Relations Act, 29 U.S.C. § 185(a), to enforce the

2002-2007 Operating Engineers Master Labor Agreement (Master

Labor Agreement or CBA) between AGC and Local 701.  In addition,

pursuant to the Employee Retirement Income Security Act, section

502, 29 U.S.C. § 1132, and section 515, 29 U.S.C. § 1145, the

First Amended Complaint seeks to enforce Pok Wan's obligation to

make fringe benefit contributions, to provide monthly reports and

to perform its attendant audit obligation in accordance with the

terms of the Trust Funds created in accordance with the CBA.

2 - OPINION AND ORDER

Pok Wan filed a Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the question of whether there is a CBA between Local 701 and Pok Wan. Oral argument was heard on the motion and, for the reasons that follow, Pok Wan's Motion for Partial Summary Judgment is denied.

### STATEMENT OF FACTS[1]

Pok Wan was a signatory to an earlier Master Labor Agreement between AGC and Local 701, that was in effect through May 31, 2002. On or about February 26, 2002, Pok Wan sent Local 701 a discontinue notice, thereby terminating the CBA on May 31, 2002. On June 1, 2002, the current Master Labor Agreement between AGC and Local 701 CBA went into effect.

Pok Wan has continuously been bound to the Master Labor Agreement and successor agreements between the AGC and Local 701 from May 15, 1989, through the present time. Pok Wan sent Local 701 termination or discontinue notices annually, but continued to abide by the terms of successor CBAs.

---

[1]     As required by the Local Rules, Pok Wan submitted a Concise Statement of Material Facts in support of its Motion for Partial Summary Judgment. In response, the Trustees submitted Plaintiff's Response to Defendant's Concise Statement. In that pleading, Trustees accepted all but paragraph 13 of Pok Wan's Concise Statement. In addition, the Trustees submitted "Additional Material Facts" that were not disputed by Pok Wan, either in the form of a reply pleading or at oral argument. See Local Rule 56.1(b)(3)("In the same manner as set forth in LR 56.1(b)(1) the moving party shall reply to the responding party's additional facts."). Accordingly, those additional facts set forth by the Trustees are deemed accepted by Pok Wan for purposes of the pending motion.

3 - OPINION AND ORDER

The Local 701 CBAs require signatory employers to pay contributions to the Trust Funds for employees performing work within Local 701's jurisdiction, and incorporate by reference the terms of the Trust Agreement that govern the funds. Through the AGC-Local 701 Trust Funds, members of Local 701 and their families receive medical and dental, disability, pension, vacation and training benefits. The Trust Funds are only allowed to accept contributions from employers who are signatory or parties to a CBA with Local 701 or are negotiating a successor agreement with Local 701. When paying Trust Fund contributions for its employees after sending in the February 2002 termination notice, Pok Wan paid increases to the contribution rate when those increases were required by the CBA with Local 701.

During the period between July 2002 and October 2004, Pok Wan intermittently made contributions to the Trust Funds and filed contribution reports. These contributions were for those Local 701 members employed by Pok Wan who requested that contributions be made to the Trust Funds. During the period between July 2002 and October 2004, Pok Wan did not make contributions on behalf of all employees who were within the jurisdiction of Local 701. Since October 2004, however, Pok Wan has employed employees who are within the jurisdiction of Local 701 but has not made contributions on their behalf.

4 - OPINION AND ORDER

The contribution reports submitted by Pok Wan included the following certification: "The herein named employer certifies that it is signatory to and bound by a written collective bargaining agreement requiring contributions to the funds listed hereon."  In the 29 reports submitted by Pok Wan between June 2002 and October 2004, the language was struck by Pok Wan on only three reports in 2003.

Pok Wan used Local 701's hiring hall to obtain employees between January and June 2002.  In fact, during the period between June 3, 2002, and April 19, 2005, Pok Wan used Local 701's hiring hall on at least eight occasions.

On or about July 14, 2003, James Cauthorn, the President of Pok Wan, had a conversation with Mark Holliday, business manager and financial secretary of Local 701 and a trustee of the Trust Funds.  Cauthorn told Holliday he would sign a new agreement and asked Holliday to send one to him.  Holliday then mailed Cauthorn a new agreement on July 14, 2003.  Cauthorn did not sign the CBA.

On or about June 7, 2004, Trustee Steve Bradley, a field representative for Local 701, spoke to Cauthorn about signing a new CBA.  Cauthorn never stated that he would not sign the agreement.  Rather, Cauthorn told Bradley to send him the agreement to sign.  On or about June 24, 2004, Bradley delivered the CBA to Cauthorn to sign.  Cauthorn told Bradley to leave it

in Cauthorn's pickup truck and that he would sign it later.
Cauthorn did not sign the CBA.

Because the work Pok Wan does is primarily public works
jobs, he pays his employees public wage rates.  The wages
required as prevailing wages on public jobs mirror the wage rates
in CBAs.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure allows the
granting of summary judgment: if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a
judgment as a matter of law.  Fed.R.Civ.P. 56(c). "[T]he
requirement is that there be no genuine issue of material fact."
Anthes v. Transworld Systems, Inc., 765 F.Supp. 162, 165 (Del.
1991)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
247-48 (1986))(emphasis omitted).

The movant has the initial burden of establishing that no
genuine issue of material fact exists or that a material fact
essential to the nonmovant's claim is absent.  Celotex v.
Catrett, 477 U.S. 317, 322-24 (1986).  Once the movant has met
its burden, the onus is on the nonmovant to establish that there
is a genuine issue of material fact.  Id. at 324.  In order to
meet this burden, the nonmovant "may not rest upon the mere

6 - OPINION AND ORDER

allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); <u>see</u> <u>Celotex</u>, 477 U.S. at 324.

An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome of the case. <u>Anderson</u>, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id</u>. at 250. On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id</u>. at 249-50 (citations omitted).

## DISCUSSION

Pok Wan seeks partial summary judgment on the issue of whether there is CBA between Local 701 and Pok Wan. If, as Pok Wan contends, there was no CBA between the parties, "the portion of this suit pertaining to the time period of the CBA should be dismissed with prejudice." According to Pok Wan, it is undisputed that it was not a signatory to the 2002-2007 Master Labor Agreement or that the 2000-2002 Master Labor Agreement was still in effect. Rather, the dispute focuses on whether Pok Wan adopted the 2002-2007 Master Labor Agreement by its conduct. Pok

Wan insists that its conduct "manifested the clear intention to not be bound to the CBA."

Specifically, Pok Wan contends that it did not implement the terms of the CBA.  For example, it did not pay the wages and benefits required by the CBA.  Rather, it paid the wages and benefits required by federal and state law.  Pok Wan asserts that it alone set, determined and modified the terms and conditions of employment for its employees.  While Pok Wan acknowledges that it did deduct and remit Local 701 dues from employees' pay and make contributions to the Trust Funds, it did so only for Local 701 employees who asked Pok Wan to do so, not on behalf of all employees within Local 701's jurisdiction.  Finally, Pok Wan points to its conduct of notifying Local 701 of its intent to discontinue the 2000-2002 Master Labor Agreement; its decision not to enter into negotiations to reach a new agreement; and, its decision not to sign the subsequent agreement.

In response, the Trustees allege that Pok Wan complied with the CBA subsequent to June 2002.  Moreover, Pok Wan:

> took advantage of the labor agreement by paying
> contributions on behalf of its many employees, allowing them
> to get health, pension, vacation and training benefits
> through the Trust Funds.  It took advantage of Local 701's
> hiring hall by requesting union members to work for the
> company on various jobs subsequent to June 2002.  It misled
> union officials regarding its intent to sign an agreement.
> Despite this and other conduct, Pok Wan asserts that it has
> no obligations under the contract.

Plaintiff's Memorandum of Law in Response at 3.  According to the

8 - OPINION AND ORDER

Trustees, disputed issues of material fact regarding whether a contract exists between the parties defeats summary judgment here.

The Trustees' argument is simple -- Pok Wan, subsequent to the expiration of the CBA in 2002, ratified a renewal of the CBA by conduct consistent with its terms.  The Trustees rely primarily on two cases for its "adoption by conduct" theory: E.S.P. Concrete Pumping, Inc., 327 NLRB. 711 (1999) and Southern California Painters & Allied Trade District Council No. 36 v. Best Interiors, 359 F.3d 1127 (9th Cir. 2004).  In Best, the Ninth Circuit looked to the decision of the N.L.R.B. in E.S.P. Concrete to overrule a previous case in which the court rejected the argument that an employer may adopt a § 158(f) contract by conduct.  Best, 359 F.3d at 1131 (citing Hawaii Carpenters' Trust Funds v. Henry, 906 F.2d 1349, 1355 (9th Cir. 1990)).  In so doing, the Ninth Circuit deferred to the N.R.L.B.'s conclusion in E.S.P. Concrete that "the adoption-by-conduct doctrine was applicable to § 158(f) agreements even in the absence of a signed agreement."  Id. (citing E.S.P. Concrete, 327 NLRB at 712).  The appeals court found that the district court erred as a matter of law when it dismissed an action on the ground that § 158(f) did not permit parties to adopt a labor agreement by conduct.  Best, 359 F.3d at 1132.

To determine whether a party has adopted a contract by its
conduct, the relevant inquiry is whether the party has displayed
"conduct manifesting an intention to abide by the terms of the
agreement." N.L.R.B. v. Haberman Constr. Co., 641 F.2d 351, 356
(5th Cir. 1981)(en banc); accord Best, 359 F.3d at 1133.  It
appears from the case law that the corollary to abiding by the
terms of the agreement is that the employer is able to avail
itself of the benefits of the CBA.  The principle at issue is
whether "a party to such an agreement can reap its benefits and
then avoid paying the bargained-for-consideration." Jim McNeff,
Inc. v. Todd, 461 U.S. 271 (1983).

The court will consider whether there is evidence in the
record to create a material issue of fact regarding whether Pok
Wan complied with the terms of the Master Labor Agreement and
enjoyed the benefits provided by Local 701.  Viewing the facts in
the light most favorable to Local 701, the allegation is that Pok
Wan continued to abide by the successor CBA entered into for the
period of June 1, 2002, through May 31, 2007.

In his signed declaration Mark Holliday, business manager
and financial secretary of Local 701, asserts that Cauthorn's
February 26, 2002, notice terminating his labor agreement with
Local 701 was no different than the prior years where Cauthorn
sent in letters terminating the CBA, but then continued to abide
by the CBA with Local 701.  Indeed, Holliday states that it was

10 - OPINION AND ORDER

clear Cauthorn continued to abide by the Master Labor Agreement even after sending in the February 2002 termination letter. In his declaration, Holliday points to a number of actions by Pok Wan in support of this contention.

For example, two years and five months after it purportedly terminated its contract with Local 701, Pok Wan continued to employ members of Local 701 on whose behalf it paid union dues and made contributions to the Trust Funds under the terms of the CBA. Moreover, when the CBA called for increases in those Trust Fund contributions, those were paid by Pok Wan. Holliday submits that he had no information that there were other employees that Pok Wan employed who were performing work within Local 701's jurisdiction on behalf of whom he was not making contributions and that the number of employees on behalf of whom he was making contributions were consistent with the numbers that were employed in all the years he had contracts with Local 701.

Next, Holliday directs the court to the language on the Trust Fund forms signed by Cauthorn each month that contributions were remitted. The forms stated as follows: "The herein named employer certifies that it is signatory to and bound by a written collective bargaining agreement requiring contributions to the funds listed hereon." The evidence establishes that Cauthorn was cognizant of the significance of this language. Indeed, Cauthorn struck the language for three months in 2003 and then resumed

submitting the trust reports without striking the language for the following 12 months.

The court is aware of the Fifth Circuit's decision in Firesheets v. A.G. Bldg. Specialists, Inc., 134 F.3d 729 (5th Cir. 1998), in which the court stated, among other things, that "the existence of some boilerplate language on the record-keeping documents for the contributions does not bind" the employer. Id. at 732. In this case, however, the employer clearly was aware of and considered the "boilerplate" language as evidenced by his conduct of striking the language on three occasions. The court makes no determination of the significance of Cauthorn's decision to remit payment with the language intact other than to find that it is distinguishable from Firesheets. The actual weight to be given the Cauthorn's actions is for a jury to decide.

Another example is Pok Wan's continued use of Local 701's hiring hall. As Holliday explains, the use of Local 701's hiring hall is one of the most important benefits the union provides to signatory employers. Employers who are signatory to the contracts do not have to worry about finding qualified individuals to operate equipment on construction jobs. Rather, those employers need only call the hiring hall and the Local 701 will immediately dispatch operators who have been trained by the union and are experienced for the work. Employers who are not

12 - OPINION AND ORDER

signatory to Local 701 contracts are never permitted to use the hiring hall.

It is undisputed that immediately after sending the February 2002 letter, Pok Wan continued to use Local 701's hiring hall. In fact, it continued to use Local 701's hiring hall in 2002, 2003, 2004 and as late as April 2005.  The calls to the hiring hall were made either by Cauthorn or the supervisor, Dale Farley. The calls were no different than those calls received prior to Pok Wan's attempted termination of the contract.

In July 2003, Holliday became aware that Cauthorn had not yet signed the CBA.  Holliday alleges that he talked to Cauthorn on the phone just prior to July 14, 2003, after one of the field representatives had spoken to him.  Cauthorn told Holliday he would sign a new agreement and to "send me down an agreement." The new Master Labor Agreement was sent to Cauthorn on July 14, 2003.

Upon realizing in 2004 that Cauthorn had still not signed the CBA, Holliday had Steve Bradley, a field representative, take the CBA to Cauthorn for signature.  Holliday's understanding of Bradley's conversations with Cauthorn was that Cauthorn reiterated that he would sign the agreement although, in fact, he never did.[2]

_____

[2]     Similarly, in his declaration Steve Bradley states:

5.    In 2004 I was advised that Pok Wan had still

Finally, Holliday disputes Cauthorn's deposition testimony that Pok Wan did not pay prevailing wage rates to his employees under the CBA with Local 701, but rather under "the PWR rules." According to Holliday, the comment is misleading.  The prevailing wage rates on public jobs for Operating Engineers is generally based on, and mirrors, the wage rates set forth in the applicable CBA with AGC.  This also includes the amount paid for benefits.

---

not signed the Collective Bargaining Agreement, which went into effect in 2002. This was not unusual.  Employers who have been signatory will often cancel an agreement at the end of its term, and then re-sign the new Master Labor Agreement which is negotiated on an industry-wide basis.  But it may be months if not years before the new agreement is actually signed.  So long as the employer is complying with the new agreement, this is rarely of concern.  It seemed clear to me that Pok Wan was complying in that when I was on job sites with Pok Wan, the only employees operating equipment were members of Local 701.

6.    On or about June 7, 2004, I talked with James Cauthorn at a project his company was working on near Eugene, Oregon at the Coburg off-ramp.  Specifically I asked Mr. Cauthorn about signing a new agreement.  He never told me he was not going to sign the agreement. He told me to send him the agreement to sign and that he also had a person he wanted initiated into Local 701.

7.    On June 24, 2004, I delivered the agreement to Mr. Cauthorn for him to sign.  He told me to simply leave it in his pickup truck on top of his brief case and that he would sign it later, which I did.

As set forth above, the allegations by Local 701 create a
triable issue of fact whether Pok Wan adopted the Master Labor
Agreement by its conduct.  At least to some extent, Pok Wan's
actions with regard to Local 701 are similar to the actions taken
by other employers that were found to have ratified, without
signature, their respective agreements.[3]  See, e.g., Best, 359
F.3d at 1133; Arco Elec. Co. v. N.L.R.B., 618 F.2d 698, 699-700
(10th Cir. 1980)(company adopted CBA during negotiations by
availing itself of benefits of union hiring hall for referral of
employees, deducting union assessments and remitting them to
union, making appropriate deductions for various union funds, and
paying contract employees according to the wage scale called for
in CBA); E.S.P. Concrete, 327 NLRB 711 (employer adopted previous
CBA by complying with terms of agreement by deducting and
remitting dues, paying union wages and benefits, and representing
itself as union business); Haberman Constr., 641 F.2d at 356-357
(company adopted § 158(f) contract by paying workers at CBA
payscale and contributing to the Union's trust funds).  Based on
its conduct here, a jury could conclude that Pok Wan adopted the
2002-2007 Master Labor Agreement because it voluntarily complied

---

[3]    At oral argument, counsel for Pok Wan alluded to "an
element of duplicity" in determining whether an employer has
manifested an intent to adopt a labor agreement.  In its review
of the case law, the court cannot find such a prerequisite nor
will it seek to modify the existing Ninth Circuit case law by
applying that requirement here.

with the terms and received the benefits of that Agreement by
contributing to the Trust Funds, including complying with
periodic increases, using Local 701's hiring hall, making
statements that indicated an intent to sign the new CBA and
allegedly paying union wages.

A review of the competing allegations reveals that a
determination must be made regarding whether Pok Wan acted to
adopt or to  repudiate the CBA.  The inquiry is fact-based and
for a jury to decide.  Accordingly, Pok Wan's Motion for Partial
Summary Judgment is denied

**CONCLUSION**

Based on the foregoing, the Pok Wan's Motion for Partial
Summary Judgment (doc. #47) is DENIED.

IT IS SO ORDERED

Dated this  _20_  day of June 2007.


          _/s/Donald C. Ashmanskas_
            Donald C. Ashmanskas
          United States Magistrate Judge

16 - OPINION AND ORDER